OF THE

## STATE OF NEW JERSEY,

## ON APPEAL FROM THE COURT OF CHANCERY,

AND PREROGATIVE COURT.

MARCH TERM, 1886.

---

CORNELIUS VAN DUYNE, et al., appellants,

*v.*

MATTIE C. SHANN et al., respondents.

1. The complainant, in a bill to foreclose a mortgage, agreed with a defendant, who had purchased the equity of redemption from the mortgagor, that if he, the defendant, should buy the land at the sheriff's sale, he, the complainant, would take a new mortgage for the amount of his decree. Accordingly, the land was struck off by the sheriff to the complainant, who directed the sheriff to make his deed to the defendant—the latter giving the new mortgage to the complainant. The defendant never gave up the possession.—*Held,* that the complainant could not be charged with rents and profits, as a mortgagee in possession, in favor of judgment creditors of the mortgagor, who had acquired a lien upon the equity of redemption subsequent to the original mortgage, but, inadvertently, had not been made defendants in the foreclosure.

311

2. Persons having rights in said land superior to said complainant's original mortgage and to said judgment, surrendered their rights to said owner of the equity of redemption, in order that the mortgage which he was to give to the complainant should become a superior lien, and in consideration that the owner of the equity should at once reconvey to them their rights subject to the complainant's mortgage.—*Held,* that they did not thereby lose, in equity, their priority to the judgment.

On appeal from decree of the chancellor, whose opinion is reported in *Van Duyne* v. *Shann, 12 Stew. Eq. 6.*

*Mr. George O. Vanderbilt,* for complainant, appellant.

*Mr. R. S. Woodruff, Jr.,* for F. H. Fenning, trustee, appellant.

*Messrs. J. W.* and *J. R. Field,* for respondent.

The opinion of the court was delivered by

DIXON, J.

John Fenning died December 31st, 1866, seized in fee of a house and lot in Princeton, then encumbered by three mortgages —one to David Hulfish, dated March 10th, 1840, for $200 ; one to Anthony Simmons, dated June 13th, 1856, for $500, and one to Abram Johnson, dated August 1st, 1865, for $500. By his will he devised the property to his wife for life, with remainder in fee to his son John A., charged with legacies to his children—James, Frederick, George, Theresa and Mary— amounting to $1,750, and payable on the death of his wife, or within one year afterwards. On May 26th, 1868, John A. Fenning and wife gave a mortgage on the premises to Cornelius Van Duyne to secure $1,000, which was duly registered. On November 4th, 1868, J. H. Cain & Co. recovered a judgment in the supreme court against John A. Fenning for $669.99. On October 9th, 1869, John A. Fenning and wife conveyed the premises to Charles J. Fenning.

In this condition of the title, Cornelius Van Duyne, on March 10th, 1870, filed a bill to foreclose his mortgage against Charles

J. Fenning and wife, but without making J. H. Cain & Co. defendants—their judgment having been overlooked.

At the time set for the sale of the property under this fore-closure, it was agreed by Van Duyne and Charles J. Fenning that, if the latter would buy the property at the sale, Van Duyne would take a new mortgage for the amount of his decree, with interest and costs, and as much more as would make $2,000, which surplus he would advance, provided it should be applied to pay off the Hulfish mortgage, the interest on the Simmons and Johnson mortgages, and the taxes due upon the property, and provided the widow and legatees of John Fenning, deceased, would execute releases so that the $2,000 mortgage might be a lien on the absolute fee simple of the property next after the Simmons and Johnson mortgages. To secure the carrying out of this arrangement, the premises were struck off to Van Duyne at the sheriff's sale, March 31st, 1871, for $100, no one bidding more, and on April 7th, 1871, at Van Duyne's direction, the sheriff made his deed to Charles J. Fenning. Thereupon, the widow and legatees executed a deed, dated April 6th, 1871, surrendering their interests to Charles J. Fenning, and on April 7th, 1871, he and his wife gave a mortgage for $2,000 to Van Duyne, and a subsequent mortgage to Frederick H. Fenning, as trustee, to secure an annuity of $250 to the widow in lieu of her life estate, and the payment of $1,750 to the legatees upon the widow's death. At that time the principal and interest of Van Duyne's mortgage amounted to $1,202.76, of the Hulfish mortgage to $224, the arrears of interest on the Simmons mortgage were $100, on the Johnson mortgage $175, and the arrears of taxes were $200. The total of these sums, $1,901.76, was liquidated by Van Duyne, and included in his mortgage for $2,000; the remainder of the last-named sum being absorbed by the costs of the foreclosure.

Charles J. Fenning and his grantees have had continual possession of the premises since the conveyance to him by John A. Fenning.

The present bill was filed in 1882, by Cornelius Van Duyne, to foreclose the Simmons mortgage, of which he became the owner

Van Duyne *v.* Shann.

on June 9th, 1871, and the $2,000 mortgage before mentioned. Among other parties, George Ward, surviving partner of J. H. Cain & Co., and Frederick H. Fenning, trustee for the widow and legatees of John Fenning, deceased, are made defendants.

The chancellor decreed that the complainant should be allowed, against the J. H. Cain & Co. judgment, his Simmons mortgage and so much of his $2,000 mortgage as represented money advanced by him to pay off encumbrances which were prior to the judgment, but that he should account for all rents and profits of the mortgaged premises received by Charles J. Fenning or his grantees since the delivery of the sheriff's deed, April 7th, 1871, and should be allowed for all taxes and interest thereon, whether paid by himself, or by Charles J. Fenning or his grantees, and for all necessary repairs and improvements and interest thereon put on the property by said Charles or his grantees.

From those portions of the decree charging the complainant with the rents and profits of the mortgaged premises, subject to deduction for taxes, repairs and improvements, the complainant appeals.

We think this appeal is well grounded. The decree is capable of support only on the hypothesis that the complainant, as mortgagee, took possession April 7th, 1871, either actually or constructively, *quoad* the judgment creditors, J. H. Cain & Co. *Demarest* v. *Berry, 1 C. E. Gr. 481; Dawson* v. *Drake, 3 Stew. Eq. 601; Bigler* v. *Waller, 14 Wall. 297.*

This hypothesis is not true, whether we consider the facts or the equitable theory of the matter. The facts have been stated, and they show that on the so-called sale of the sheriff, there was, between the complainant and Charles J. Fenning, neither change of ownership nor change of possession. After that transaction, as before, Fenning continued in possession as owner and the complainant remained out of possession as mortgagee. The equitable theory of the affair, looked at from the standpoint of these judgment creditors, is that as they were not made parties to the action, their rights were not affected by the suit. The sheriff's sale and deed were part of the proceedings in the cause, deriving all their force from its pendency, and therefore are to

be laid out of sight in determining the rights of these creditors. With respect to them, the case is just as it would have been if the foreclosure suit had never been brought, and the complainant, retaining his original mortgage, had, with Fenning's consent, advanced the money to pay earlier encumbrances, on an agreement that he was to have the lien of those encumbrances for his security. The arrangement was one entirely free from fraud, and neither in purpose nor in effect worked any detriment to J. H. Cain & Co., and there appears no reason for their taking any advantage of it.

We think the complainant should be regarded as mortgagee merely out of possession, and holding encumbrances preferred to the Cain judgment, to the extent that his $2,000 mortgage represents liens which were prior to it, viz., $1,901.76, and unpaid interest thereon.

The decree below also holds that by the release which the widow and legatees of John Fenning, deceased, executed to Charles J. Fenning, they lost their priority over the Cain judgment, and must now stand only on the mortgage given by Charles to Frederick H. Fenning, their trustee, after the entry of the judgment. From this part of the decree the trustee appeals; and we think this appeal also should succeed.

It is quite evident that the substance of the transaction between the widow and legatees upon the one side, and Charles J. Fenning upon the other, was that the former should surrender their rights in the land to the latter, in consideration of the latter's executing the mortgage to the trustee for the former. The deed of surrender and the mortgage were delivered as parts of a single transaction and simultaneously, except as a theoretical interval was required to let in the $2,000 mortgage to the complainant. These instruments show plainly that there was no design to extinguish the rights of the widow and legatees, or in any way to impair them, save by substituting for them the trustee mortgage postponed to the complainant's mortgage. Even if Charles J. Fenning had been the debtor in the Cain judgment, this trustee mortgage would stand as a purchase-money mortgage, and with reference to the interests purchased by it would

constitute a lien preferred to antecedent judgments against the purchaser, both by statute and on general principles of equity. *Rev. p. 167 § 77; Simmons* v. *Vandegrift, Sax. 55; 2 Pom. Eq. Jur. § 725. A fortiori,* when the purchaser was not the debtor and was in no way chargeable with the judgment, except that the estate in remainder which he derived from John A. Fenning was encumbered by it, there is no reason to hold that the rights vested in the purchaser momentarily, under the deed of the widow and legatees, should enure to the benefit of the judgment creditors of one who was a stranger to that deed. These creditors are not bound to acquiesce in the transaction at all; but they cannot claim the benefit of part of it and refuse to recognize the just effect of the residue. They must either submit to the trustee mortgage, or go back to the life estate in the widow and the testamentary charges in favor of the legatees.

The rights of the legatees under the trustee mortgage we understand to be equivalent to their rights under the will of John Fenning, deceased. If the judgment creditor deems the widow's annuity under the mortgage more than an equivalent for her life estate, he may have the life estate appraised under the rules of equity, and so exactly secure his original lien.

Let the decree below be reversed, and a decree be entered in accordance with the foregoing views.

*Decree unanimously reversed.*